IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TITUS HENDERSON,

                            Plaintiff,

    v.

CATHY A. JESS, KRISTEY JELLE,
VICKI SEBASTIAN,
SUSAN LOCKWOOD-ROBERTS,                      OPINION and ORDER
VICKI J. MARTIN, MICHAEL L. BURKE,
DARNELL E. COLE, KEVIN P. REILLY,                     18-cv-713-jdp
RICHARD J. TELFER, RAYMOND W. CROSS,
MARK J. BRADLEY, CHARLES R. PRUITT,
MICHAEL J. SPECTOR, BRENT P. SMITH,
MICHAEL J. FALBO,
and JOHN DOE UW SYSTEM PRESIDENT,

                            Defendants.

---

       Plaintiff Titus Henderson, appearing pro se, is currently a prisoner at Green Bay Correctional Institution. Henderson alleges that state and private officials developed college correspondence courses for prisoners that discriminated against him based on his age: the programs were limited to inmates age 35 or under. He brings age-discrimination claims for damages and injunctive relief under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

       The parties have filed cross-motions for summary judgment. Dkt. 90; Dkt. 94; Dkt. 104; Dkt. 112; Dkt. 120. Henderson is not entitled to injunctive relief because there is no longer an age limit on prison correspondence courses. For his damages claims, Henderson fails to show that most of the defendants were personally involved in the age restrictions at issue here, and I conclude that there was a rational basis for the age limit on the courses offered

at the prison. Accordingly, I will deny Henderson's motion for summary judgment, grant defendants' motions for summary judgment, and dismiss the case.

PRELIMINARY MATTERS

I begin with some preliminary issues.

I granted Henderson an extension of time to file his summary judgment opposition brief after Henderson stated that Captains Daniel Cushing and James Elsinger had confiscated some of his legal material—including his opposition brief—at the request of counsel. The Department of Corrections (DOC) defendants responded that both Cushing and Elsinger were on leave and unreachable during the short briefing period on Henderson's motion of extension of time. I granted Henderson an extension and I directed the DOC defendants to submit a copy of Henderson's brief if they had one. Dkt. 140, at 7. And because Cushing and Elsinger had returned from leave by the time of my order, I directed them to submit declarations responding to Henderson's allegations. *Id.* Cushing and Elsinger responded with declarations denying that they confiscated Henderson's materials or that they told Henderson that they were doing so at the behest of counsel. Dkt. 141 and Dkt. 145.

Ultimately, there is no need to hold a hearing about what happened with Henderson's original opposition brief. Henderson filed a second motion for extension of time to file his opposition materials, Dkt. 147, and he followed up with those materials. Three of the four groups of defendants followed with their respective oppositions to Henderson's summary judgment motion and replies to their own summary judgment motions. I will grant Henderson's motion for extension of time and I will accept all of the parties' filings.

Henderson continues to assert that DOC officials are blocking his access to this court by refusing to allow him to submit documents in pen. He requests that I order the DOC to let him use pens to file submissions here. But I rejected a similar request in my previous order. *See* Dkt. 140, at 6. Henderson is correct that the court has directed hm to refile some of his documents written in crayon or pencil because they were unreadable after being scanned. If that happens again in this or other cases that Henderson brings in this court, he will be given another chance to file readable documents. Sporadic problems with the readability of his handwritten documents isn't enough reason for the court to interfere with the DOC's pen policy. The parties' cross-motions for summary judgment are fully briefed and ready for my review.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Titus Henderson is currently housed at Green Bay Correctional Institution. The events material to this case occurred when Henderson was incarcerated at Wisconsin Secure Program Facility. Henderson was born in 1975.

This case concerns alleged age discrimination in opportunities to take college correspondence courses in Wisconsin prisons. Through the Higher Education Opportunity Act of 2008, Congress authorized funding for "Grants to States for Workplace and Community Transition Training for Incarcerated Individuals" from 2009 through 2014. Pub. L. 110-315, § 932 (enacted at 20 U.S.C. § 1151).

The law directed the United States Department of Education to offer grants to state correctional entities for programs:

> that assist and encourage incarcerated individuals who have obtained a secondary school diploma or its recognized equivalent to acquire educational and job skills, through: (1) coursework in preparation for postsecondary education; (2) the pursuit of a postsecondary education certificate, an associate's degree, or a bachelor's degree while in prison; and (3) employment counseling and other related services that start during incarceration and end not later than two years after release from incarceration.

Dkt. 97-1, at 1. Under this law, one of the eligibility requirements for programs using these grants was that prisoner must be 35 years old or younger. *Id.* at 7; Pub. L. 110-315, § 932.

Defendants from the DOC and Milwaukee Area Technical College (MATC) state that they collaborated to create a correspondence-course program using Higher Education Opportunity Act grants. The DOC contracted with MATC to create the "College of the Air" program, under which MATC developed course content and instructional materials for incarcerated students to obtain an Associates of Arts degree. Prisoners could use the credits they achieved through their MATC coursework and transfer those credits to any UW System institution. Initially, MATC sent all coursework to Wisconsin prisons on a DVD. MATC later worked with the Correctional Education Association to have MATC's coursework streamed over Correctional Education Association's satellite to each participating institution. Under the terms of the federal grant, participation was limited to prisoners 35 and under.

Henderson named as defendants high-ranking officials at the DOC, MATC, Correctional Education Association, and the University of Wisconsin System, stating that they all participated in creating or enforcing the rules for the College of the Air program, and more specifically the 35-and-under age limit. He says the following about the contracts he reviewed before applying for the program:

> [I]n the contract, UW Board of Regents and Correctional Education Association, Platteville, MATC, there was like

4

> numerous other entities that was part of that contract that created College of the Air.
>
> . . . .
>
> Yes, sir, that was part of the contract. Those—it was Correctional Education Association, MATC, UW Board of Regents and Platteville and [defendant] Cathy Jess, they created that policy to put an age limit of 35. And when you signed the contract, the two different contracts that I had signed that I thought that was going to get me into the College of the Air program, those entities' names was on there, on that contract, on the two contracts.

Henderson Depo., Dkt. 83, at 60, 65. None of the parties provide a copy of the College of the Air contract. For Henderson's individual-capacity claims for damages, he sues Cathy Jess from the DOC for creating the discriminatory program, as well as Vicki Sebastian (the institution director for programming) and Kristey Jelle (the institution coordinator for education projects), who denied his requests to take courses under the program. Henderson also names as defendants current or former presidents of the other entities that he believes were involved in creating and enforcing the program: Vicki J. Martin, Michael L. Burke, and Darnell E. Cole from MATC; Susan Lockwood-Roberts from the Correctional Education Association; and Kevin P. Reilly, Richard J. Telfer, Raymond W. Cross, Mark J. Bradley, Charles R. Pruitt, Michael J. Spector, Brent P. Smith, and Michael J. Falbo from the UW System.

Henderson filled out DOC-1117 application forms to take classes under the College of the Air program four times—in March 2009, September 2009, December 2013, and March 2014—but he was denied each time by defendants Sebastian and Jelle.

The courses that Henderson sought to take in his four denied applications were ones in computer science from UW-Madison, criminology from UW-Platteville, and statistics from UW-Stout. MATC states that these courses were not actually part of the College of the Air program because the coursework in that program was provided directly from MATC. But

Henderson maintains that those courses were indeed included in the College of the Air program and that his requests were denied under the age requirements of that program. The parties do not provide copies of Henderson's DOC-1117 application forms—Henderson states that his copies were confiscated by DOC staff during the pendency of this lawsuit. In any event, Henderson doesn't suggest that the correspondence courses he applied for were funded under a different source than the Higher Education Opportunity Act or otherwise suggest that the DOC defendants intentionally used his age to deny him participation in a program that wasn't subject to that age limit. At the summary judgment stage, I will accept Henderson's assertion that the parties treated his four requests as being made under the College of the Air program.

The parties dispute exactly when the College of the Air program and successor programs ended, but after Henderson's final request in March 2014 the federal grants program was repealed by the Workforce Innovation and Opportunity Act. Pub. L. No. 113-128, § 511(b) (2014). Currently there are no age limits on DOC prisoners taking correspondence courses.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

**A. Official-capacity claims**

The following claims remain in the case:

- Official-capacity Fourteenth Amendment equal protection age-discrimination claims against DOC defendants Kevin Carr, Lois Ellis, and Trina Kroening-Skime; MATC defendant Vicki J. Martin; Correctional Education Association defendant Susan Lockwood-Roberts; and UW System defendant John Doe president.

- Individual-capacity Fourteenth Amendment equal protection age-discrimination claims against DOC defendants Cathy A. Jess, Kristey Jelle, and Vicki Sebastian; MATC defendants Martin, Michael L. Burke, and Darnell E. Cole; Correctional Education Association defendant Lockwood-Roberts; and UW System

defendants Kevin P. Reilly, Richard J. Telfer, Raymond W. Cross, Mark J. Bradley, Charles R. Pruitt, Michael J. Spector, Brent P. Smith, and Michael J. Falbo.

Regarding the official-capacity claims for injunctive relief, Henderson failed to amend his complaint to name the current UW System president, who would have to be included to enforce any injunctive relief against the system. If injunctive relief were necessary, I'd give Henderson another chance to amend his complaint or I would take judicial notice of the correct party. But it is unnecessary to do that here because the undisputed evidence shows that DOC inmates are no longer subject to the age-based rules for correspondence courses at issue in Henderson's individual-capacity claims. The federal law establishing the age limit on grants for prisoner education was repealed in 2014 and current DOC policies do not include an age limit. I will grant summary judgment to all the sets of defendants on Henderson's official-capacity claims for injunctive relief.

### B. Individual-capacity claims

The various sets of defendants move for summary judgment on Henderson's individual-capacity claims in part based on Henderson's failure to show that they were personally involved in the alleged violation of his rights. More specifically, Henderson fails to provide any evidence showing that the defendant MATC presidents, defendant UW System presidents, or Correctional Education Association president Lockwood-Roberts were personally involved in creating or condoning the age limit for college correspondence courses. Individual defendants can be liable for a constitutional claim under 42 U.S.C. § 1983 like Henderson's Fourteenth Amendment claims here only if they were personally involved in the events that harmed the plaintiff. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). It is undisputed that the

7

College of the Air program was a joint venture developed by the DOC and MATC, and that courses were transmitted using Correctional Education Association technology.

But Henderson has not provided evidence showing that the presidents of these institutions were personally involved in approving the program. The presidents cannot be held liable for a constitutional claim merely because they ran their respective entities. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) ("For constitutional violations under § 1983, a government official 'is only liable for his or her own misconduct. There is no such thing as *respondeat superior* liability for government officials." (internal quotations and citation omitted)); *see also Slabon v. Sanchez*, No. 15-CV-08965, 2020 WL 5763760, at *18 (N.D. Ill. Sept. 28, 2020) ("'The buck stops here,' standing alone, is not a basis to impose personal liability under section 1983."). So I will grant summary judgment to the MATC, Correctional Education Association, and UW System defendants.

That leaves defendants Jess, Jelle, and Sebastian, the individual DOC defendants who Henderson alleges were involved in administering the correspondence-course programs and denying Henderson's requests to take courses because of his age.

Age is not a suspect classification like race, but state actors must still have a rational reason for treating parties differently on the basis of age. *Varner v. Ill. St. Univ.*, 226 F.3d 927, 931 (7th Cir. 2000). To prevail under the rational basis standard, a plaintiff must prove that "(1) the defendant intentionally treated him differently from others similarly situated, (2) the defendant intentionally treated him differently because of his membership in the class to which he belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006). Put another way, states may discriminate on the basis of age without violating the Fourteenth Amendment if the

8

age classification in question is rationally related to a legitimate state interest. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000).

Henderson states that he submitted forms requesting to take courses in March 2009, September 2009, December 2013, and late March 2014 but was denied because of his age on each occasion. Defendants point out that Henderson didn't turn 36 until 2011. I agree with defendants that the first two denials could not have plausibly been based on his age.

Even for the two requests after Henderson turned 36, the DOC defendants say that Henderson wasn't eligible to take a correspondence course because he was in segregation. The logs of Henderson's internal movement in prison confirm that he was in solitary confinement during the times of his second two requests: in December 2013 he was disciplinary separation and in late March 2014 he was in administrative confinement. But the DOC defendants give conflicting statements about whether courses were barred for all types of segregation or just for disciplinary separation, and in any event Henderson says that other inmates in segregation were indeed allowed to take correspondence courses. So I won't grant summary judgment to the DOC defendants on the ground that Henderson was ineligible because of his segregation status.

It is difficult to tell what really occurred with the four denials of Henderson's attempts to take College of the Air courses because the parties do not provide the DOC-1117 request forms from those requests. Henderson says that Cushing, Elsinger, and other DOC staff confiscated the forms along with his original summary judgment opposition brief. But he says that when defendants denied his applications they included a copy of a College of the Air program information sheet explaining the eligibility criteria, including the 35-and-under age limit—a document that is in the record, Dkt. 123-5—and he says that age was the reason he

9

was given for the denials. I will assume for purposes of this opinion that a reasonable jury could conclude that age was the reason that Henderson's requests were denied. Nonetheless, he cannot succeed on his equal protection claims because the DOC defendants had a rational basis for denying his requests.

The rational basis standard is not a demanding one. "The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision." *Kimel*, 528 U.S. at 83. An equal protection age-discrimination claim cannot succeed "'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Id.* at 84 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)). "[A] State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests." *Id.* Age classifications are "presumptively rational," and Henderson "bears the burden of proving that the 'facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id.* (quoting *Bradley*, 440 U.S. at 111).

The DOC defendants say that they were merely following the federal program-eligibility criteria, and that their decision to administer the program in the manner required by federal law is rationally related to the legitimate state interest of providing federally funded postsecondary education opportunities for inmates. In other words, they followed the federal rules so that they could use grant money to provide programming. That is clearly a rational basis for adhering to the age limit.

Henderson objects to this rationale as relying on an unlawful federal statute, calling it a "the devil made me do it" defense for the DOC defendants' discriminatory actions. Dkt. 151,

at 5. He contends that the Higher Education Opportunity Act's age limit on grants is itself discriminatory and that the federal government cannot force state governments to violate the Fourteenth Amendment. *Id.* at 6 (citing *Shapiro v. Thompson*, 394 U.S. 618, 641 (1969) ("Congress may not authorize the States to violate the Equal Protection Clause"), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974)).

But even if I looked to Congress's underlying decision to limit grants for prisoner education to those 35 and under, that decision passes the rational basis test. The Higher Education Opportunity Act amended provisions created by the Higher Education Amendments of 1998, which themselves modified the Higher Education Act of 1965. *See* Pub. L. 105-244. In the 1998 amendments, Congress made specific findings about the need for grants for educating what it then called "youth offenders" (defined as age 25 and under) who were likely to be first-time adult felons with "little or no job experience [or] marketable skills." *Id.*, § 821(a). Congress found that most of these young inmates "can be diverted from a life of crime into productive citizenship with available educational, vocational, work skills, and related service programs." *Id.*, § 821(a)(5).

The Higher Education Opportunity Act expanded the grants to those aged 35 and under—meaning that the program was actually opened to older inmates than originally envisioned, making it *less* discriminatory. And even with the expansion to inmates 35 and under, the undemanding rational basis standard is met by Congress's rationale as explained in 1998: educational programming would have a greater impact on recidivism among younger inmates because they are more likely to have thinner criminal records and additional education or training would particularly help those with less real-world job experience. These broad assumptions may not hold true for every particular inmate, but they could "'reasonably be

11

conceived to be true'" by Congress. *Kimel*, 528 U.S. at 84 (quoting *Bradley*, 440 U.S. at 111). Therefore, the DOC defendants' decisions to seek grants under the Higher Education Opportunity Act and to follow the age requirement in that act did not violate Henderson's equal-protection rights.

Henderson makes other arguments, such as that the DOC defendants violated his First Amendment rights by depriving him of textbooks that thwarted his attempts to take other college courses, and that the DOC improperly promulgated regulations about correspondence courses and the High Risk Offender Program that blocked him from taking courses, but I did not grant him leave to proceed on those claims. The only question is whether defendants violated the Equal Protection Clause by discriminating against him based on his age regarding placement in college correspondence courses. Because Henderson fails to show that any of the defendants' actions at issue here violated the Equal Protection Clause, I will deny his motion for summary judgment, grant defendants' motions for summary judgment, and dismiss the case.[1]

ORDER

IT IS ORDERED that:

1. Plaintiff Titus Henderson's motion for extension of time to submit his summary judgment opposition materials, Dkt. 147, is GRANTED.

2. Plaintiff's motion for court intervention concerning his writing materials, Dkt. 147, is DENIED.

3. Plaintiff's motion for summary judgment, Dkt. 120, is DENIED.

---

[1] Defendants also contend that they are entitled to qualified immunity on Henderson's claims. Because I am dismissing Henderson's claims on the merits, I need not consider defendants' qualified immunity arguments.

4. Defendants' motions for summary judgment, Dkt. 90; Dkt. 94; Dkt. 104; Dkt. 112, are GRANTED.

5. The clerk of court is directed to enter judgment accordingly and close the case.

Entered March 22, 2022.

                               BY THE COURT:

                               /s/

                               _____
                               JAMES D. PETERSON
                               District Judge